Argued June 28, affirmed September 6, petition for rehearing
denied September 26, 1956

## McCALLISTER *v.* JONES ET AL

300 P. 2d 973

*Hugh B. Collins,* Medford, argued the cause for appellant. With him on the brief was J. Everett Barr, Medford.

*H. Dewey Wilson,* Medford, argued the cause for respondent Walter H. Jones. With him on the brief were McAllister, Duncan & Brophy, Medford.

*Jack L. Hoffman,* Portland, argued the cause for respondent The First National Bank of Portland. With him on the brief were Pendergrass, Spackman and Bullivant, and Charles E. Wright, all of Portland.

Before WARNER, Chief Justice, and TOOZE and PERRY, Justices.

TOOZE, J.

This is a suit by Verna M. McCallister, as plaintiff, to obtain contribution from her comortgagor and former husband, Walter H. Jones, as defendant. The First National Bank of Portland, as mortgagee, was also named as a defendant. The Jackson county circuit court sustained the bank's demurrer to the complaint and dismissed the suit with prejudice as to it. Walter H. Jones answered setting forth the provisions of a property settlement agreement which had been incorporated into the final decree in a divorce proceeding between him and plaintiff and under which he claimed that his obligation as a comortgagor had been released by plaintiff. The trial court overruled plaintiff's demurrer to the answer, and upon plaintiff's statement that she did not desire to plead further, a decree was entered which dismissed her complaint. Plaintiff appeals from this decree.

Plaintiff was the owner of certain property located on South Oakdale street in Medford, Oregon. On December 3, 1949, defendant and plaintiff, then husband

and wife, executed a mortgage on this property to secure the payment of a debt. Pursuant to a provision of the property settlement above mentioned, on January 10, 1953, plaintiff conveyed a portion of this property to defendant. The theory of the complaint is that defendant is now liable to pay a share of the mortgage debt proportionate to that portion of the Oakdale property conveyed to him. It may be assumed for the purposes of this appeal that this contention would be meritorious if there were no agreement providing otherwise. The question then is presented by the pleadings whether the property settlement agreement relieves the defendant of such liability.

The provisions of this agreement which must be considered are as follows:

"2. Second party shall have and take as her sole and separate property, *subject to the present mortgage thereon,* the property on South Oakdale Street in Medford, Oregon, where the parties are now residing, which property is more particularly described as follows: [There follows a description of a portion of the Oakdale property.]

"* * * * *

"6. First party shall secure the release of second party's name from all indebtedness at The First National Bank of Portland (Oregon), Medford Branch, which is now standing in their joint names, or upon which second party is surety, *except for any mortgage on the South Oakdale* property which she may have executed.

"* * * * *

"8. *This agreement is in full and complete settlement of all property rights between the parties hereto as husband and wife, both now and after the death of either party to this agreement.* Henceforth, neither party shall have any interest whatsoever in or to any property, real, personal, or mixed, of the other party to this agreement, whether now owned by such party or hereafter acquired.

"The provisions hereof are intended and agreed to be in full settlement, satisfaction, release and compromise of all claims, judgments, rights or demands which either may have or claim, now or in the future, against the other or against any property belonging to the other, and each party expressly waives and relinquishes any rights or demands which either may have or claim against the other or against the property of the other, whether arising out of the marital relationship, or otherwise." (Italics ours.)

The specific mention of the Oakdale mortgage in both paragraphs two and six of the agreement shows that the parties had the Oakdale mortgage in mind when they entered into the agreement and also when they executed the general release contained in paragraph eight of that agreement. It follows that the parties intended by the general release to terminate all present rights as against each other arising from their relation as comortgagors of the Oakdale property.

■ Plaintiff, however, contends that her right of contribution arose subsequent to the agreement and was, therefore, unaffected by the general release. This contention is without merit. The right of contribution arises when the relation of co-obligors is entered into; it then continues to exist as a present inchoate right, which will ripen into a cause of action when and if one of the parties pays more than his just share. *Durbin v. Kuney & Sayres,* 19 Or 71, 75, 23 P 661.

The precise issue, whether a right of contribution is a present inchoate right or a future right, was considered by the Supreme Court of Wisconsin in *Estate of Koch,* 148 Wis 548, 556, 558, 134 NW 663. With respect to this the court said:

"The right, inchoate, has its inception at the time of signing the guaranty. It sleepeth, so to

speak, till aroused into life, by compulsory payment by one of more than his share of the loss. Upon others refusing to make good, there is a violated right creating a cause of action of legal or equitable cognizance, or both. * * *. The idea is not that any express contract exists between cosureties upon which an action will lie, but that there is a contract implied, growing out of the relations of the parties,—*a contract which is contemporaneous with the signing of the guaranty, not which springs up by overpayment by a surety."* (Italics ours.)

From this it follows, as the court held, that:

"* * * the right of contribution may be parted with to cosureties by contract, or lost to the extent that prejudicial breach of duty to the cosureties would otherwise proximately cause loss to them, and may be forfeited in some other ways definitely established in the law."

It is our opinion that a right of contribution is a releaseable interest and that it was in fact released in the instant case by operation of paragraph eight of the property settlement agreement. The practical effect of this release is that regardless of which party the mortgagee should choose to collect from, that party would have no right of contribution from his co-obligor. This gives the mortgagee a choice between two co-obligors knowing that neither will have any recourse against the other. The outcome of the situation is wholly in the hands of the creditor. This is, nevertheless, the unavoidable consequence when co-obligors execute a general release as to rights against each other at a time when an inchoate right of contribution was in existence.

Because this suit for contribution is barred by the release, we need not consider whether under the prop-

erty settlement agreement, the plaintiff affirmatively assumed the sole personal burden of the obligation as contended by defendant or whether the bank was a proper party to the suit.

The judgment is affirmed.